IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

POTOMAC REALTY CAPITAL, LLC,    )
    )
    PLAINTIFF,    )
    )
v.    )   CASE NO. 2:08-cv-204-MEF
    )
MARY GREEN, as Guardian and Personal    )
Representative for STEVEN GREEN, an    )   (WO- Do Not Publish)
individual,    )
    )
    DEFENDANT.    )

## MEMORANDUM OPINION AND ORDER

Potomac Realty Capital, LLC ("Potomac"), a lender, brings suit against the guardian and personal representative of Steven Green ("Guardian") pursuant to a guaranty and indemnity agreement between Potomac and Steven Green ("Green") as part of a loan transaction.[1]  Potomac alleges that Green is liable for a deficiency on the loan and that Green must indemnify it for waste at subject property.  This cause is before the Court on Potomac's Motion for Summary Judgment (Doc. # 27).  The Court has carefully considered the submissions in support of and in opposition to the motion and finds that it is due to be GRANTED in part and DENIED in part.

### JURISDICTION AND VENUE

This Court finds that it has subject-matter jurisdiction over this action is proper

---

[1]  Green is the sole member of Gaslight Commons Apartments Co., LLC which borrow money from Potomac in early 2006.

pursuant to 28 U.S.C. § 1332.[2]  The parties do not contest personal jurisdiction or venue, and the Court finds adequate allegations in support of both personal jurisdiction and venue.

## SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).   The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a

---

[2]  More than $75,000 is in controversy.  Potomac is a corporate citizen of Delaware and Massachusetts.   Green is a citizen of New York.

2

genuine issue for trial.'"  *Id.* at 324.  To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  A plaintiff must present evidence demonstrating that he can establish the basic elements of his claim.  *Celotex,* 477 U.S. at 322.  A court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).

## FACTS

The Court has carefully considered all deposition excerpts and documents submitted in support of and in opposition to the motion for partial summary judgment.  The submissions of the parties, viewed in the light most favorable to the non-moving party, establish the following facts:

Green is the sole member of Gaslight Commons Apartments Co., LLC ("Gaslight"), a Delaware limited liability company.  In 2005, Gaslight acquired the Gaslight Commons, a residential apartment complex in Montgomery, Alabama ("the Commons").  The Commons was in very bad condition when Gaslight acquired it.  Gaslight hired a construction manager and began to renovate and repair the Commons.

Gaslight approached Potomac about a loan in early 2006.  Prior to agreeing to the loan, Potomac retained Commercial Building Consultants, LLC to provide a property condition assessment of the Commons which revealed that the Commons was in need of repairs and maintenance as of April 12, 2006.  Nevertheless, on April 21, 2006, Gaslight obtained a loan from Potomac in the amount of $11,000,000.  In connection with that transaction, Potomac, Gaslight, and Green negotiated, entered into, executed, and delivered to Potomac written documents and agreements ("the Loan Documents), including a promissory note and a mortgage security agreement.  At this same time, Green also executed an Indemnity and Guaranty Agreement as a condition of Potomac making the loan to Gaslight.  By the terms of the Indemnity and Guaranty Agreement Green assumed liability for, agreed to indemnity Potomac for, and guaranteed payment to Potomac for any "physical waster of the Property."  Doc. # 29-4.[3]  In addition, Green promised to guarantee the performance of Gaslight under the note and mortgage security agreement.  The Indemnity

---

[3]        The Indemnity and Guaranty Agreement provides that:

[Green] hereby assumes liability for, hereby guarantees payment to [Potomac] of, hereby agrees to pay, protect, defend and save [Potomac] harmless from and against, and hereby indemnifies [Potomac] from and against any and all liabilities, obligations, losses, damages, costs and expenses (including without limitation, demands and judgments of any nature or description whatsoever (collectively **"Costs"**) which may at any time be imposed upon, incurred by or awarded against [Potomac] as a result of:

(c) physical waste of the Property.

Doc. # 29-4.

and Guaranty Agreement states as follows:

> This is a guaranty of payment and performance and not of collection.  The liability of [Green] under this Agreement shall be absolute, direct and immediate and not conditional or contingent upon the pursuit of any remedies against [Gaslight] or any other person (including, without limitation, other guarantors, if any), nor against the collateral for the Loan. [Green] waives any right to require that an action be brought against [Gaslight] or any other person or to require that resort be had to any collateral for the Loan or to any balance of any deposit account or credit on the books of Potomac in favor of [Gaslight] or any other person.  In the event, on account of the Bankruptcy Reform Act of 1978, as amended, or any other debt relief law (whether statutory, common law, case law or otherwise) of any jurisdiction whatsoever, now or hereafter in effect, which may be or become applicable, [Gaslight] shall be relieved of or fail to incur any debt, obligation or liability as provided in the Loan Documents, [Green] shall nevertheless be fully liable therefor.  In the event of a default under the Loan Documents which is not cured within any applicable grace or cure period, [Potomac] shall have the right to enforce its rights, power and remedies (including without limitation, foreclosure of all or any portion of the collateral for the Loan) thereunder or hereunder, in any order, and all rights, powers and remedies available to [Potomac] in such event shall be non-exclusive and cumulative of all other rights, powers and remedies provided thereunder and hereunder or by law or equity.  If the indebtedness and obligations guaranteed hereby are partially paid or discharged by reason of the exercise of any of the remedies available to [Potomac], this Agreement shall nevertheless remain in full force and effect, and subject to the terms hereof, [Green] shall remain liable for all remaining indebtedness and obligations guaranteed hereby, even though any rights which Green may have against Gaslight may be destroyed or diminished by the exercise of any such remedy.

*Id.*  In addition, the Indemnity and Guaranty Agreement included a provision addressing

attorneys' fees:

> In the event it is necessary for [Potomac] to retain the services of an attorney or any other consultants in order to enforce this Agreement, or any portion thereof, [Green] agrees to pay to [Potomac] any and all costs and expenses, including, without limitations, attorneys' fees (at both the trial and appellate levels), incurred by [Potomac] as a result thereof and such costs, fees and expenses shall be included in Costs [as that term is defined in the section of the

document which outlines what Potomac can recover from Green].

*Id.*

Gaslight made numerous payments under the note to Potomac, which Potomac accepted and applied to the debt owning under the note. Gaslight made these payments while also spending significant sums on renovations and repairs to the Commons. Gaslight faced costs which exceeded expectations and revenues in the form of rent from the property which failed to meet expectations.

The loan's original maturity date was May 1, 2007. It is undisputed that Gaslight failed to make all the payments required by the terms of the loan agreement and that it was in default. It is also undisputed that Potomac allowed Gaslight to continue to make efforts to make the Commons viable and extended time for repayment of the loan.

On May 9, 2007, Green suffered severe injuries in a traffic accidents.[4] A court in New York appointed Mary Green to be Temporary Guardian of Green in September of 2007. On February 6, 2008, Green was adjudicated incapacitated by the Supreme Court of the State of New York, Westchester County and Mary Green was named his Guardian and Personal Representative.

In December of 2007, Gaslight was still in default on the loan. At that time, Potomac declared all the indebtedness due and payable and gave notice of foreclosure to Gaslight.

---

[4] A car hit Green while he was attempting to cross a street in New York. His injuries were so serious that he remained in a coma for a month after the accident.

Additionally, it gave notice by publication in a newspaper of general circulation published in Montgomery county on three dates in December.  On or about January 3, 2008, a foreclosure sale was held on the steps of the Montgomery County Courthouse.  Potomac was the highest bidder with a bid of $7,735,000.00.  Thus, Potomac, lawfully and without objection from Gaslight, foreclosed its secured interest in and to the Commons.  When Potomac foreclosed on the Commons, the value of the property had substantially diminished from the loan amount, resulting in a deficiency balance owed to Potomac.

Potomac sought to have Green, and later Guardian, pay this balance under the terms of the Indemnity and Guaranty Agreement.  Guardian disputes that the Indemnity and Guaranty Agreement obligates Green to pay the deficiency balance.  Potomac has offered significant evidence of failure to maintain the Common property and significant repairs needed and damage sustained to the property after the date of the loan.  Guardian counters by offering evidence that Green did spend money to repair and improve the property and Guardian states in a rather conclusory fashion that she disputes that waste has occurred.[5]

On March 21, 2008, Potomac brought this action against Green.  First, Potomac seeks the deficiency balance of $3,265,000, accrued and unpaid interest and fees beginning on the

---

[5] There is no evidence in the record that Guardian has any personal knowledge of the condition of the property at any time or that she has ever seen the property.  The Court has the ability to disregard evidence which is facially deficient under Federal Rule of Civil Procedure 56.  Accordingly, the Court does not view Guardian's conclusory assertions, which fail to establish any personal knowledge of any facts in support of those conclusions, as creating a genuine issue of material fact.

date of the default through the date of the filing of the lawsuit in the sum of $1,143,532.24, and future accruals of interest beginning on April 1, 2008 in the amount provided by the loan documents, plus reasonable attorney's fees in the amount of 15% of the total balance and court costs. Furthermore, Potomac seeks as damages for the breach of contract claim on the deficiency, its expenses associated with operations of the residential property after the foreclosure in the amount of $511,049.71. In addition to this first breach of contract claim relating to the deficiency, Potomac also brings a breach of contract claim in which it alleges that Green broke his contractual promise to indemnify it after failing to ensure against commission of physical waste in and to the Commons and by failing to collect and remit rents for residential apartment units within the Commons as required by the agreements between the parties.

It is undisputed that Gaslight made some repairs and performed some maintenance on the property after completing the loan with Potomac and before foreclosure. It is also undisputed that Gaslight renovated some of the apartment units. The record also contains undisputed evidence that the overall condition of the Commons significantly and visibly deteriorated between March of 2006 and early January of 2008. Some of the units which Gaslight had expended resources on renovating nevertheless later sustained significant water damage either from plumbing leaks or backed up sewers or roof leaks.

After some initial difficulties with respect to service of the defendant and after amending the complaint to properly bring the suit against Guardian due to Green's having

become incapacitated, Potomac filed the motion for summary judgment now before the Court.  By this motion, Potomac seeks judgment as a matter of law on both counts of the complaint.  Guardian opposes the motion on a variety of grounds.

## DISCUSSION

### A.    Applicable Law

When an action brought is before a federal court pursuant to its subject matter jurisdiction under 28 U.S.C. § 1332, that court must employ the choice-of-law rules of the jurisdiction in which it sits in determining the proper law to apply in the case.  *See, e.g., Klaxon Co. v. Stentor Elec. Co.*, 313 U.S. 487 (1941); *Morris v. SSE, Inc.,* 912 F.2d 1392, 1394 n.1 (11th Cir. 1990); *Benchmark Med. Holdings, Inc. v. Rehab Solutions, LLC,* 307 F. Supp. 1249, 1258-59 (M.D. Ala. 2004) ("When a federal court decides a state law claim, whether acting pursuant to diversity or supplemental jurisdiction, it applies the choice-of-law rules of the jurisdiction in which its sits.")  Thus, this Court must apply Alabama choice-of-law rules to the question of which state's law is applicable in this case.  "To determine which law applies in contract disputes, Alabama courts 'first look to the contract to determine whether the parties have specified a particular sovereign's law to govern.'"  *Clanton v. Inter.Net Global, L.L.C.*, 435 F.3d 1319, 1323 (11th Cir. 2006) *(*citing *Stovall v. Universal Const. Co., Inc.,* 893 So. 2d 1090, 1102 (Ala. 2004) (citation omitted)).  In this case, the relevant contractual agreement between the parties indicates that Alabama law is to apply to any future dispute between them.  Thus, Alabama's choice-of-law rules require this Court

to apply Alabama law to this case.[6]

## B.  Breach of Contract

### 1.  Claim on the Guaranty Provision

In order to prevail on a breach of contract claim under Alabama law, the plaintiff must establish: "(1) the existence of a valid contract binding the parties in the action, (2) its own performance under the contract, (3) the defendant's non-performance, and (4) damages." *Childersburg Bancorporation, Inc. v. People State Bank of Commerce*, 962 So. 2d 248 (Ala. Civ. App. 2006).  In this case, it is undisputed that Green executed the Indemnity and Guaranty Agreement at the time that Potomac was entering into the lending agreement with Gaslight.  It is also undisputed that Green's agreement to enter into that Indemnity and Guaranty Agreement was a condition to Potomac making the loan to Gaslight.  There is no dispute as to the validity of the Indemnity and Guaranty Agreement.  It is also undisputed that Potomac performed under the contract by lending the money to Gaslight. The plain language of the Indemnity and Guaranty Agreement requires Green to pay any deficiency if Gaslight defaults on the loan and the foreclosure on the property fails to satisfy the amount owed to Potomac.  It is undisputed that Gaslight did indeed default on the loan and that there exists a deficiency, which establishes damages.

The real question before this Court is a simple interpretation of the language of the

---

[6]  The parties do not appear from their arguments to disagree that Alabama law should provide the substantive law to govern their dispute.

Indemnity and Guaranty Agreement.[7]  Guardian contends that it is a conditional guaranty and that the stated conditions for its applicability have not been met.  Specifically, Guardian contends that the guaranty portion of the agreement only applies if one of the conditions listed in paragraph 1(a)(i) is triggered.  Potomac points to different language in the Indemnity and Guaranty Agreement and argues that the guaranty agreement is not conditional in the way Guardian suggests.  This is not a genuine issue of material fact, but rather a legal determination to be made by reading the language of the Indemnity and Guaranty Agreement.

In the Court's view, Potomac urges the correct result.  The language on which Guardian relies are conditions which define the indemnification obligation and not the guaranty obligation in the agreement.  The language of the Indemnity and Guaranty Agreement which provides the guaranty obligation is clearly not conditioned in the way that Guardian suggests.  Indeed, the Indemnity and Guaranty Agreement clearly provides that Green is liable for all remaining indebtedness and obligations guaranteed by the Indemnity and Guaranty Agreement.  Moreover, the items of damages claimed on the deficiency claim,

---

[7] Guardian advances three arguments in opposition to Potomac's motion for summary judgment on the deficiency claim.  Only one of them merits any serious discussion. Guardian's argument regarding the appropriateness of Anna Collins' declaration is wholly without merit.  This declaration is proper evidence in support of Potomac's motion. Guardian's argument that Green cannot be liable on the Indemnity and Guaranty Agreement because he did not have notice of the foreclosure is also without merit as Potomac provided notice in the legally approved fashion and as nothing in the Indemnity and Guaranty Agreement requires such notice as a condition precedent to its efficacy.  Thus, the Court focuses its discussion on the main argument on the deficiency claim which is that the guaranty Green executed has not properly been triggered.

including the attorney's fees are appropriately recoverable under the very terms of the Indemnity and Guaranty Agreement Green executed.  For this reason, the Court finds that there are no genuine issues as to any material fact and Potomac has shown it is entitled to judgment as a matter of law on most of the deficiency claim.[8]

In the alternative, the Court finds that the record before it establishes that waste has occurred on the property during the time Green was responsible for the property.  Thus, even if Guardian was correct that the Indemnity and Guaranty Agreement makes the guaranty provision conditional, that waste satisfies the precondition to the guaranty.  For this alternative reason, the Court is satisfied that Potomac is entitled to judgment as a matter of law on the deficiency claim.

## 2.  Claim on the Indemnification for Waste Provision

In the second count of the amended complaint, Potomac seeks indemnification for its damages caused by physical waste to the Commons property.  Guardian contends that there

---

[8] Although no genuine issue exists as to any material fact, the Court is not satisfied based on the record and argument before it that Potomac has established that it is entitled to judgment as a matter of law on one element of its deficiency claim: namely, the sum claimed for costs and fees which Potomac incurred after the date of the foreclosure to carry on the operations of the residential apartments.  It may well be that Potomac is legally entitled to the sum claimed, either under a specific provision of the contract or under the applicable law, but Potomac has not sufficiently established that legal entitlement.  Although the defendant has not made this contention, the Court may not grant a motion for summary judgment, even if it is not opposed, without ascertaining that the movant is entitled to judgment as a matter of law.  Nothing in this finding precludes Potomac from urging this claim at trial despite the denial of the Motion for Summary Judgment.  The Court suggests, however, if Potomac intends to persist in this claim, that it file a trial brief outlining the basis for the legal entitlement to this sum along with evidence establishing the total amount now claimed.

exist genuine issues as to the facts material to this claim. While the Court agrees that genuine issues of material fact exist as to the extent of the damages owed Potomac for physical waste on to the Commons property, the Court finds as a matter of law that the Indemnity and Guaranty Agreement unambiguously obligates Green to indemnify Potomac for physical waste to the Commons property and that the undisputed facts, even when viewed in the light most favorable to Guardian, establish that physical waste did occur. It is clear that despite the fact that Green and Gaslight worked to improve the Commons, the overall condition of the Commons worsened between the closing of the underlying loan in March of 2006 and the time of the foreclosure in January of 2008. The physical changes to the real estate reduced its value. This is especially true because renovated units suffered damage due to leaks, sewer problems, and plumbing problems which rendered them inoperable as rental units. Thus, it is clear to the Court that waste did occur and thus Green is liable to indemnify Potomac for that waste. That having been said, the Court finds the extent of the waste is not subject to determination without a trial because there exist genuine issues of material fact as to the extent of the waste.

**CONCLUSION**

For the foregoing reasons, it is hereby ORDERED as follows:

1. The Motion for Summary Judgment (Doc. # 27) due to be GRANTED in part and DENIED in part. It is GRANTED as to liability and damages on Count One (Breach of Contract - Deficiency), except as to the claim for $511,049.71 for costs and fees which

Potomac incurred after the date of the foreclosure to carry on the operations of the residential apartments.  As to the claim in Count One for $511,049.71 for costs and fees which Potomac incurred after the date of the foreclosure to carry on the operations of the residential apartments, the Motion for Summary Judgment is DENIED.  The Motion for Summary Judgment is GRANTED as to liability, but DENIED as to damages on Count Two (Breach of Contract -Waste Rents Due).

2. Potomac's request for entry of final judgment pursuant to Federal Rule of Civil Procedure 54(b) is GRANTED.  The Court finds that there is no just reason for delaying the entry of a partial final judgment on the portions of Potomac's deficiency claim on which its Motion for Summary Judgment has been granted (most of Count One).  Accordingly, a separate final judgment on that Count will be entered.

3.  The evidentiary hearing on the remaining portion of Count One and the disputed damages for Count Two will be conducted  during the trial setting already in place for this case.

DONE this the 2nd day of June, 2009.

/s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE

14